All rise. The Illinois Public Court Third Division is now in session. The Honorable Justice Mary Ann Dixon is presiding. Good morning. Please have a seat. Can we call our case please, Ms. Taylor? 10619 People v. Terry Tates. Would counsel please approach? And why don't you tell us who you are and who you represent? Hi, I'm Chan Yoon with the Office of the State of Bell Defender on behalf of Terry Tates. I'm Assistant State's Attorney Catherine Sodetz on behalf of the people of the State of Illinois. All right. And thank you both for coming to this rescheduled argument. We apologize again for the miscommunication on the last date. And we appreciate your making yourselves available today to do the argument. You are our only case on the call today. The three of us are reasonable about time limitations. But I'll tell you, we have all read the briefs and we're very familiar with your case. How much time would you like, Mr. Yoon? Your Honor, I would request 15 minutes for the argument reserved for five minutes for rebuttal. All right. Ms. Sodetz? 15 minutes. Okay. Great. And I'm sure you both know that the microphones in front of you are for recording purposes only. So if you'll keep your voice up so that everybody in the courtroom can hear you, we'll appreciate it. And with that, Mr. Yoon? Thank you. I'd ask you to forget about the section dealing with drugs in the kitchen and just emphasize what goes on in the dining room. And with that, the opening, that the drugs are there, that he's there. How did he get there? Is there any inference? And that's what's bothering me, the inferences, that really he's probably just an agent of his brother bringing people there for drugs. So those are my thoughts. I haven't made up my mind because I think this case is close. But I keep saying, how stupid could he be to be there? Because obviously he knew what his brother did. Well, Your Honor, I'll just jump right into it. So in these constructive possession cases, in order to establish constructive possession, you have to show or the State has to show that the defendant has knowledge over the contraband and has the ability to exercise immediate and exclusive control over the contraband. That's why I raised the issue of agency or that he's just a goon for his brother, meaning that would tie the two together. Is there any evidence of that? There's no evidence here of Terry being in any sort involved in whatever drug activity is in the house besides his mere presence. And the case I'll state clear, the cases that I cited in my briefs, People v. Wray and People v. Strong, where the defendants are found in common areas of the house. In People v. Wray, a 1st District case, the defendants are found in a living room, 18 inches away from a coffee table. And this court reversed their convictions on the basis that there's no other connection between the defendants and their contraband besides their mere proximity. Again, in People v. Strong, a very similar set of facts. The defendants found sleeping near a coffee table where there was, again, contraband in plain view. And again, the 3rd District reversed the defendant's conviction on the basis that the defendant didn't engage in any activity that suggested he controlled the contraband. And that's what we have here. Terry is simply seen near this dining room table. He's merely present at the scene. The police officers, there's nothing at this house, first of all, that connects them to the house, control of the house itself. There's no mail addressed to him found at the house. There's no bill addressed to him. None of his possessions are found at his house. None of his clothing is found at the house. There's nothing here that connects him to this house where all these drugs are found. And also on his person, there's nothing found that is connected to drug dealing. There's no big wad of cash. There's no weapons found on him. Again, there's nothing here that shows that Terry is connected to any sort of drug dealing. The only evidence to state presented is that he's merely present at this house. Although it's true that the police officers testified that he ran when they entered the house, when they executed a search warrant. In People v. Moore, a case decided by this panel in 2015, this court held, this court stated, and I quote, even where a defendant is first observed fleeing from a location where narcotics is found, that fact is not sufficient to prove constructive possession absent any further indicia of knowledge or control. So even the fact that Terry ran can't be used to show consciousness of guilt in this case under where we have in Moore. So if we consider all these cases together, People v. Ray, People v. Strong, People v. Moore, the facts here are simply insufficient to convict Terry on the theory of constructive possession. And for that reason, his conviction is supposed to be reversed in this case. And what makes this case even more compelling than the other cases is the fact that we have a co-defendant, Walter Tates, basically admitting that all the drugs in the house are his. He says in this inculpatory statement that's introduced at trial, Walter Tates basically admits that he's the one selling the drugs out of the house. Walter uses the term we, which goes back to my theory of agency, or that he's a dealer for the brother. Well, two things with that we. First of all, that we is made in the context. If you look at that statement in context, and I'll read it here in the right order that it was presented. I just came back here 10 minutes ago or else you would not have caught me. This is what happens when you're in the game. You guys do your thing, we do ours. I make my selling, well, you know I got caught. So if you take that we into context, there's no evidence that's a reference to Terry. He's talking about this drug dealing game when he uses this word we. And he's also the one that the police are targeting. Exactly. Walter is the one on the search warrant. Terry is not on the search warrant. Walter is saying that he's playing this game and this you guys is a reference to the police and this we is a reference to drug dealers in general. But even if we assume that the we is a reference to his drug dealing game, again, there's no evidence in this case. There's no evidence whatsoever that Terry is part of that we, that Terry is participating in this game. The only evidence they presented is that he was merely present in the house when the search warrant was executed. And if the search warrant was executed at a different time, if the police decided to go, let's say, an hour earlier and Terry was at a different part of the house, there really wouldn't be any evidence against him. The only evidence they have is that he was merely standing by a table where there were some drugs. And in People v. Ray and People v. Strong, we have identical facts. These defendants are seen near a coffee table where there was drugs in plain view. Again, Terry was seen near a coffee table where there was, or not a coffee table, a dining room table, excuse me, where there was drugs in plain view. And the case law here, the Illinois case law, is clear that that's not going to be sufficient to sustain a conviction on a theory of constructive possession. Is the familial relationship between Terry and Walter in the record? Do we know what the relationship is? It's not in the record in terms of what the jury heard. The jury hears the statement from one of the officers who mentions that Terry is the brother of Walter. But that's actually not true. In the part of the record where the jury doesn't hear, in this case, Terry's jury and Robert Greene's jury, it comes out that Walter is Terry's uncle. So they are related. But the jury, there's objection to it, and there is some, the jury is under the impression maybe that they're related as brothers. But in this case, again, just because your family member is committing a crime, that doesn't mean that you're involved in the crime or you're involved in criminal activity. Just because Walter is doing this stuff, that he's selling the drugs out of the house, doesn't mean that Terry is somehow involved. To arrive at that inference with no other evidence in this case besides the fact that he's just there, that's, you know, that is not sufficient to sustain a conviction. Again, let's say Walter's mom was present in the house. Would she be responsible for the drugs? Basing a conviction on that basis would be, would set a dangerous precedent. What was in plain view according to the evidence? So what's in plain view is pretty much the marijuana, the cannabis is in plain view. On the dining room table, there's cannabis and there's also other scale drug contraband. And that's where these two men were sitting? Yeah. Having lunch? So, well, they were sitting there. There's no, Robert Greene's testimony is that Terry invites them over to the house and they're having lunch at a different part, area of the house. So Robert Greene's testimony sort of contradicts what the police officer says, but I think the main takeaway here is. He said they were sitting outside at the picnic table, right? Exactly. So that's Robert Greene's testimony. But under either set of events, under either set of facts here, the police officer's testimony that he's just there by the dining room table or Robert Greene's testimony that Terry's outside with Robert Greene. Both cases, they're just merely present. It doesn't, Robert Greene's testimony doesn't, it doesn't add to the state's evidence. He does testify that Terry invites him over to the house, but if you invite someone over, it doesn't necessarily mean that you know what's going on in the house. And even if we make that assumption, again, in order to establish constructive possession, you have to show knowledge and control. Just because you invite someone over to someone else's house doesn't mean that, let me use this example. If I invite someone over to my friend's house and I know my friend is involved in criminal activity in that house or that he possesses contraband, it doesn't mean that I myself am involved in that criminal activity or that I control that contraband. Well, tell me why the presence of, if you just had cannabis, that's one thing, but tell me why the presence of the other things, the scale, the smaller bags, and they're sitting right there at the table, why that does not indicate that they're exercising control over the drugs. Well, there's no evidence in this case that Terry was handling the drugs at the dining room table. By the time the cops broke the door down, I'm sure they were handling nothing but running out the door. But the fact of the matter is, according to the evidence, there's both cannabis and there's weighing equipment and smaller bags to put the dope into. So I'm just trying to find out what the argument is that says that the presence of that other stuff doesn't provide enough evidence in terms of constructive possession. Well, in this case, again, there's no testimony about Terry touching any of the drugs. He's just there by the table. Just because there's this presence of other contraband there doesn't mean that he's using it or that he's controlling it or intends to control it in any way. If someone visits the house and sees all this contraband, including the drugs, including the scales, the baggies, and he just comes in and doesn't know that it's there, it doesn't mean that he intends to control it as much as, for example, if I'm next to an object, just because I'm near it doesn't mean I intend to control it. The state's evidence here doesn't show any evidence of intent to control, which is paramount to constructive possession theory. And the fact that the state failed to introduce that evidence, again, this case is very similar to Rae and Strong. There's nothing here that shows any sort of protection besides mere proximity. And the case is clear. You have to have some initial control beyond that. And that simply wasn't the case here. If Your Honors don't have any other questions, I would just reiterate again that the state's evidence just merely establishes that Terry is merely present in the house, and that's not enough to sustain convictions on a basis of constructive possession. And for that reason, I would request that Terry's convictions be reversed outright. Thank you. Thank you. All right, Ms. Sonitz. I would like to start by distinguishing the cases that counsel said were identical to the case that we have here. He cited two, Rae and Strong, both of which had small amounts of narcotics. In Rae, the narcotics were in an opaque container. And in Strong, there was a much smaller amount than there was here. Did the court in either case mention the small amount as a deciding factor? They did not. But in this case, the defendant was seen in close proximity to over 2,000 grams of cannabis in approximately 700 bags. The rest was just laying out loosely in clumps on the table. As Your Honor stated, there was scales. There was also doormen and grinders used to cut and grind heroin laying on this dining room table in plain view. And the defendant also ran, and this Court has determined that that is proper for the trial effect to consider as consciousness of defendant's guilt. So what's the difference between Terry Tate and Mr. Green in terms of the state's proof? Well, first things first, Officer Wilk, who led the execution of the search warrant, could not identify Codefendant Green at the trial. And whether Officer Wilk stated that they were brothers or not, them sharing the same last name is something that the trial effect could have considered in determining their verdict. But besides their two same last names, there was ample evidence, as I stated, with over 2,000 grams of cannabis laying in plain view and the defendant running from them for the trial effect to infer that defendant had knowledge of those drugs that were laying out in front of him and that he had the intent and capability to maintain control. Tell me the intent and capability to maintain control when he's either sitting at the dining room table or standing in its vicinity and he runs when officers use a battering ram to break down the front door. Where is the control? Well, in cases like Ray and Strong, the defendants are sitting at a table. They're not making any suggestive movements. Here, the defendant is running from a table that has over 2,000 grams of cannabis in plain view. As Your Honor stated, there was 700 bags of cannabis from small little bags with emblems for individual sale up to pound- and ounce-sized vacuum-sealed bags of cannabis. This was clearly a production center and defendant was actively participating in bagging it and getting it ready for sale. Do we have any evidence that he was actively participating in anything? I didn't see that in the marker. Well, in a case like People v. Brown, which is a case from this district in which the state cited in our brief, the officers used a battering ram to make a first entry and they found two innocent bystanders in a bedroom sleeping. And then they went farther into the house and found the defendant hiding with drugs in a back bedroom. Those were innocent bystanders. He was concealed in a crawl space, right? Correct. He had concealed himself in a crawl space with opaque bags of drugs and a cache of weapons. But in terms of defendant trying to claim that he was merely an innocent bystander, that he had no intent or capability to maintain control, no knowledge of these drugs laying in front of him, is distinguishable from a case like Brown where an innocent bystander who was in another room who is clearly not a part of what's going on at this table. Defendant was standing at this table and when he sees the police he's running and he knows where to run to get out of that house. He runs through the kitchen and passed... Brown, though, they said you'd have to have an intimate knowledge of this residence to know where the hidden crawl space was and to find a blanket to cover it so that you could conceal yourself in there. When you run from the dining room to the kitchen, which is to the back door, can you analogize those two situations? No, but in Brown, while defendant knew where to go and knew how to conceal those drugs, in that respect, him having control over those drugs and knowing where to hide them, defendant is standing in front of over 2,000 grams in plain view with instrumentalities used to produce these drugs for sale and bring them out on the street. And the defendant clearly knew what was going on in this case. He was not an innocent bystander. Doesn't Freeberg and many others state very clearly that an intent and capacity to main control is sufficient and it's inferred by your mere presence? Yes, in Brown, this court stated that while mere proximity to a controlled substance is insufficient to prove constructive possession or other circumstantial evidence is sufficiently probative, proximity combined with inferred knowledge of the presence of drugs will support a finding of possession and that's exactly what this case is. Okay, so then let's talk about what's in the kitchen. He's not in the kitchen. There are drugs in various locations in the kitchen. You've got heroin, cocaine, and methamphetamine. What's the evidence in support of those convictions? Well, there's grinders and Dorman, which is a sleep aid used to cut heroin, laying on the dining room table with all of the other cannabis and packaging for that in plain view. And then on the kitchen sink, there's a strainer and there's baggies containing white residue with baking soda, all of which are used to make crack cocaine. But he ran through the kitchen. He wasn't standing in the kitchen. He doesn't live in the house. How do you tag him with those drugs? Well, there's definitely evidence of the heroin production in plain view on the dining room table, and there's also the kitchen is an adjoining room to the dining room that is approximately 10 feet from where this dining room table was. These were rooms right next to each other. The defendant knew to run through there. The jury could have inferred that these two rooms were the production center. There was instrumentalities for producing crack cocaine in the adjoining room that was 10 feet away from this table containing 2,000 grams of cannabis. This was clearly a production center, and the defendant was clearly participating in it. If it's so clear, if it's so clear, then how does Green get acquitted? The same evidence. The only difference is their last name. And that Officer Wilk, who read the search warrant and was one of the first people in the door, could not make an in-court identification of co-defendant Green, but he made an identification of defendant, which is huge. And as well as the jury. Why is that huge? Because the person who is identifying these two people as running from the table can't identify one of the people that he's saying was in that room running from the table, but he can identify the other person. But they arrested both of them at the scene. Correct. But the jury... It's not like this is an identification case, a lineup case. Correct. The jury also was at liberty to consider co-defendant Green's testimony, which further removed him from standing at the table running from the drugs. He said that he saw Terry when they were getting lunch and that Terry brought him to that house and they were going to eat outside. The jury could have inferred that co-defendant Green had no knowledge of what was going on inside that house. I don't buy it. The jury, in this case, made determinations of credibility of the witnesses and the way to begin with their testimony and the inferences to draw therefrom. They were not required to draw the inferences most favorable to the defendant or accept any possible explanation compatible with this. The police got the guy they were looking for. He went in and admitted at the scene to what he was up to, and then the other two get charged and one gets acquitted on the same evidence? Walter's statement did not exclude the two co-defendants. We didn't have a script writer for him, but it came pretty close. He did say we, and he said we do our thing, you do your thing, and the jury considered that as part of the evidence, the state's evidence against the defendant. If you have no other questions for the reasons stated in our brief and argued here, we ask that you affirm defendant's convictions. Thank you. Mr. Young? Your Honor, just very briefly, first of all, I just want to point out that even when all the evidence, this police officer's testimony is accepted as true, it's still insufficient to establish constructive possession. It only establishes that the defendant, or Terry, was just merely present at the house. But is it relevant, as the state argues, that here we're talking about a large quantity of drugs, with drug paraphernalia, measuring, weighing, baggies, all strewn throughout the room in which the defendant is present? How is that not circumstantial evidence that proves it? Well, the amount of drugs, that wasn't a factor. Well, let's leave the amount alone. Then you've got the scales and you've got the cut and you've got the bags. Okay. Well, just because those items are there, doesn't mean that Terry has any kind of joint possession. Excuse me? Joint possession. Well, the case was decided on a theory that Terry and Walter, they were convicted on a theory that both of them had joint possession. But in this case, just the fact that these things are at the house, that these other cutting agents are at the house, doesn't mean that Terry is involved in this drug activity. There's no other connection between him and what's going on in the house. Again, Walter here admits that he's the one selling the drugs out of the house. He doesn't say, oh, it's me and Terry. And this restatement, while Walter is, again, as I stated before, it's just a reference to this drug dealing game. There's no evidence here that shows that Terry is part of this weed. And I would also like to point out that Brown and Miniweather are distinguishable. In those cases, there are definitely circumstances that show that the defendant was in control of the drugs. In Miniweather, you have the defendant running from the police, first of all, and then he's not even inside the house. They find him on private property below some patio furniture with the drugs, five to six feet away from him. The court points out that there's no other drug house, no other explanation for why those drugs would be there. Whereas here, we do have an explanation. Walter, Walter says that the drugs are his. And Brown, again, as your honors pointed out, in Brown, he's in a secluded area of the house, a secret area of the house where they hide things, and he knew how to get there. Whose house is it? In this case. Yeah, whose house? I believe it comes out in the Walter's transcript that it's the Walter's sister's house. All right. Was she there? She was not there. Did she get arrested? No. How did he get in? How did Walter get in? No, not Walter. How did Terry get in? Unless I'm forgetting the record, didn't Walter come in afterwards? Walter does come in afterwards. So how did Terry and Green get in the house, the house that has tens of thousands of dollars worth of dope? Let me correct myself. So the officer's testimony is that they see all three at the dining room table, and Robert Green's testimony is that they go out, well, they don't enter the house. They're outside. Yeah, they're outside. So there's no evidence here. There's just simply no evidence here that Terry is involved in this drug activity in the house. It's just mere presence. It only shows that he's a visitor in this case. For that reason, I would ask that, again, that his convictions for possession of these drugs be reversed outright. Thank you. Thank you very much. Very interesting case, excellent briefs, excellent arguments this morning, and we'll take the case under advisement. Great job. Thank you.